UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KRISTY L. WILLS,

       Plaintiff,                         Civil Action No. 10-14067

v.                               HON.  STEPHEN J. MURPHY
                                   U.S. District Judge
                                   HON. R.  STEVEN WHALEN

COMMISSIONER OF SOCIAL         U.S. Magistrate Judge
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Kristy L. Wills brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Dkt #15] be GRANTED, and that Plaintiff's Motion for Summary Judgment [Dkt #13] be DENIED.

## PROCEDURAL HISTORY

On, February 23, 2006, Plaintiff filed a claim for DIB and SSI, alleging disability as of March 1, 2004 (Tr. 42).  After the initial denial of her claim, Plaintiff requested an administrative hearing, held on February 11, 2008 in Detroit, Michigan (Tr. 243).

-1-

Administrative Law Judge ("ALJ") Kathryn D. Burgchardt  presided (Tr. 243).  Plaintiff,

represented by attorney Dan Smith, testified, as did Plaintiff's mother, Pamela Wills, and

Vocational Expert ("VE") Samuel Goldstein (Tr. 247-267, 267-269, 269-272 ).  On February

26, 2008, ALJ Burgchardt determined that Plaintiff was not disabled (Tr. 20).  On August

13, 2010, the Appeals Council denied review (Tr. 3-5).  Plaintiff filed for judicial review of

the final decision on October 11, 2010.

## BACKGROUND FACTS

Plaintiff, born March 28, 1977, was 30 when ALJ Burgchardt issued her decision (Tr.

20, 42).  She completed 11th grade and worked previously as a factory worker and scheduling

coordinator (Tr. 91, 95).  Her application for benefits alleges disability as a result of anxiety

attacks, diabetes, and asthma (Tr. 90).

### A.    Plaintiff's Testimony

Plaintiff testified that she had not worked since February 6, 2006 (Tr. 248).  She

alleged disability as a result of depression, diabetes, and "anxiety and panic attacks" (Tr.

248).  She stated that depression and anxiety were the main sources of her inability to work

(Tr. 248).   She denied physical limitations as a result of diabetes or asthma (Tr. 249).

Plaintiff testified that she cared for her three minor children, aged eleven, five, and

three (Tr. 249).  She admitted that she held a valid driver's license and drove on a regular

basis (Tr. 250).  She reported spending her leisure time drawing and watching movies with

her children (Tr. 250-251).  She denied smoking, drinking, or illegal drug use (Tr. 250-251).

She indicated that she socialized with her family on a regular basis (Tr. 251).  Plaintiff stated

-2-

that she visited her children's school on an "as needed" basis only, adding that she went to the school accompanied by her mother (Tr. 251).

Plaintiff reported that she was currently receiving therapy and medication for her psychological problems (Tr. 252). She alleged that her medication made her tired (Tr. 353). She testified that she last worked as a scheduling coordinator for a title company (Tr. 253). She indicated that prior to her scheduling jobs, she worked as a "set up laborer" and in "shipping and receiving" (Tr. 253-254). Plaintiff testified that she arose at 6:30 a.m. and that her mornings were spent helping her children prepare for school (Tr. 255). She denied limitations in household or self care activities, adding that her oldest child performed the yard chores (Tr. 255-56).

In response to questioning by her attorney, Plaintiff reported that she dropped out of high school before graduation due to panic attacks (Tr. 257). She alleged that she also lost a restaurant job as a teenager as a result of panic attacks (Tr. 258). She acknowledged that she held her next job for six and a half years, but noted that her father, sister, uncle, and two cousins worked at the same location (Tr. 259). She admitted that she drove herself to work (Tr. 259). She reported that panic attacks and distractions as a result of an abusive relationship caused her to lose her job (Tr. 260). Plaintiff indicated that her cousins helped her obtain and keep her next job, but that she was fired after taking a medical leave (Tr. 261). She reported that a subsequent job was also procured by a relative, noting that she worked in close proximity to her sister before being laid off in 2004 (Tr. 263). Plaintiff alleged that anxiety prevented her from leaving the house or driving by herself (Tr. 264). She

-3-

acknowledged that her therapy records had been sporadic, stating, "I honestly don't like going to the appointments because it makes me feel like I'm crazy and I don't like taking the medicine they keep putting me on" (Tr. 266). She admitted that she had smoked marijuana during the course of therapy and that the drug use had shown up in a urine screen testing (Tr. 266).

**B.     The Testimony of Plaintiff's Mother**

Pamela Wills testified that she visited her daughter at least once a week in an effort to get her daughter and her daughter's children "out of the house" (Tr. 267). She stated that her daughter did not leave the home unless accompanied by a relative (Tr. 268).

**C.     Medical Evidence**

**1.  Treating Sources**

In November, 2005, Plaintiff sought emergency treatment for a urinary tract infection (Tr. 112-114). She was discharged in stable condition (Tr. 114). In January, 2006, Plaintiff sought emergency treatment for non-specific chest pains and was once again discharged after evaluation (Tr. 109). A psychological intake assessment by Eastwood Community Clinics the following month states that Plaintiff appeared neatly dressed with an anxious effect (Tr. 118). Plaintiff reported that she was depressed (Tr. 118). Noting a possible diagnosis of agoraphobia, along with a history of diabetes, the evaluator assigned Plaintiff a GAF of 52[1]

---

[1]A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR* ), 30 (4th ed.2000).

(Tr. 120).

Treating notes from the following month state that Plaintiff was tearful, anxious, and depressed (Tr. 149). In June, 2006, psychiatrist Dr. Kanchana Madhavan, M.D. assigned a GAF of 50-52, noting that Plaintiff was well-groomed with coherent speech and good cognitive function[2] (Tr. 154-155). An echocardiogram from the same month was normal (Tr. 186). The following month, a therapist's evaluation stated that Plaintiff was slowly improving, noting that she had taken her children to a park (Tr. 163). She denied side effects from Lexapro or Ativan (Tr. 163). In September, 2006, Plaintiff attributed her two-month absence from therapy to her mother's and grandmother's health problems (Tr. 164). The following month, Plaintiff appeared cheerful and energetic (Tr. 165).

April, 2007 therapy notes state that Plaintiff reported continued depression, admitting that she attempted suicide as a teen and then again eight years ago (Tr. 166). Her long and short-term memory was deemed intact (Tr. 166). Plaintiff was urged to cease the use of marijuana and was asked to submit to drug testing at the next appointment (Tr. 167). Plaintiff agreed to stop using marijuana but declined to schedule her next appointment (Tr. 168). She returned to treatment in August, 2007, denying current substance abuse (Tr. 169). She indicated that she had fewer panic attacks and increased mood stability (Tr. 169). The

---

[2]

A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34 (*DSM-IV-TR* ) (4th ed.2000).

following month, Dr. Madhavan, assigning a GAF of 45, prescribed Effexor (Tr. 178).

Plaintiff did not show up for a scheduled appointment in October, 2007 (Tr. 173). In

November, 2011, Plaintiff again reported fewer panic attacks, improved mood, and

therapeutic weight loss to her therapist (Tr. 171, 181). Dr. Madhavan again assigned

Plaintiff a GAF of 45 (Tr. 179).

In January, 2008, Dr. Madhavan completed a Residual Functional Capacity

Assessment (mental) finding that Plaintiff experienced moderate deficiencies in

understanding and memory and a number of marked concentrational, social, and adaptive

deficiencies (Tr. 182-183). Dr. Madhavan opined that Plaintiff's ability to function in work-

related areas was precluded by frequent panic attacks (Tr. 184).

### 2. Non-Treating Sources

A May, 2006 Residual Functional Capacity Assessment (physical) performed on

behalf of the SSA found the absence of exertional, postural, manipulative, visual, or

communicative limitations (Tr. 123-126). Environmental limitations consisted of "avoiding

concentrated exposure" to humidity and airborne hazards (Tr. 126).

The same month, a non-examining Psychiatric Review Technique found the presence

of affective and anxiety-related disorders (depression and agoraphobia) (Tr. 130, 133, 135).

Under the 'B' Criteria of the Listings, Plaintiff was found to have mild restrictions in daily

living and *moderate* difficulties in social functioning and concentration, persistence, and pace

(Tr. 140). The evaluating source, Dr. Daniel Blake, noted that Plaintiff "only recently began

[outpatient therapy]" (Tr. 142). He noted that Plaintiff was able to cook, care for her

children, and perform household chores (Tr. 142). A Residual Functional Capacity Assessment (mental), also performed by Dr. Blake, found that Plaintiff was moderately limited in the ability to sustain attention for extended periods, work within a schedule, work in coordination with others, travel to unfamiliar places, and make plans "independently of others" (Tr. 144-145). Dr. Blake concluded that Plaintiff's "level of psychological functioning" was "impaired but not to point of precluding work" (Tr. 146).

### 3.  Material Submitted After the February 26, 2008 Administrative Decision[3]

---

[3]

Material submitted to the Appeals Council subsequent to the administrative decision is subject to a narrow review by the district court. *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir.1993). Where the Appeals Council denies a claimant's request for a review of his application based on new material, the district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Id.* at 695–96; *see also* 42 U.S.C. § 405(g) (the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..."). Hence, this Court may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of § 405(g).

This material should not be considered for multiple reasons. First, Plaintiff has not provided good cause for its tardy submission and in fact, it appears to have been generated for the sole purpose of refuting the ALJ's determination that Plaintiff's former jobs were not "accommodated"work. "[G]ood cause contemplates more than strategic delay, or sandbagging, of evidence and more than simple miscalculation of the necessity of producing such evidence in the first instance to establish a claim of disability." *Haney v. Astrue,* 2009 WL 700057, *6 (W.D.Ky.2009) (citing *Thomas v. Secretary,* 928 F.2d 255, 260 (8th Cir., 1991)). Second, the affidavits all state that Plaintiff was unable to travel to and from work on her own, contradicting her testimony that she was able to drive to work unaccompanied for at least some of her working years (Tr. 259).

On April 11, 2008, Plaintiff's attorney submitted four affidavits by Plaintiff's relatives and/or former coworkers stating that Plaintiff had performed "accommodated" work in each of her former jobs (Tr. 240-243). Plaintiff's father, Ronnie Wills, states that he was a "shop manager in charge of the shipping and receiving departments and the production department" for one of Plaintiff's former employers. (Tr. 240 at ¶2). He states that Plaintiff was unable to travel to from work by herself or work outside the presence of relatives or trusted coworkers (Tr. 240 at ¶¶4-7). He notes that Plaintiff was fired for excessive absenteeism one month after his own termination (Tr. 240 at ¶7). He states that Plaintiff's termination was attributable to her "extreme anxiety" (Tr. 240).

Plaintiff's sister, Rebecca Norman, states that she drove Plaintiff "to and from work and stayed with her at all times even during breaks" (Tr. 241 at ¶4). Likewise, Plaintiff's cousin, Marc View, states that Plaintiff was provided with transportation to and from work and worked alongside him during her tenure at the company (Tr. 242 at ¶4). He states that Plaintiff was laid off for excessive absenteeism one week after he moved to a different shift (Tr. 242 at ¶5). Finally, Michelle Donathon, a former subordinate of Plaintiff's father, states that Plaintiff "would not have been able to get the job without her father's direct involvement" and "could not get to work due to her emotional problems and was fired shortly after his departure for excessive unexcused absences" (Tr. 242 at ¶4).

D.   **Vocational Expert Testimony**

-8-

VE Samuel Goldstein classified Plaintiff's past work as a laborer as unskilled at the light exertional level and scheduling coordinator job as semiskilled and sedentary[4] (Tr. 269). The ALJ then posed the following set of limitations to the VE, taking into account Plaintiff's age, education, and work background:

> [A]ssume that this individual would require work which is simple and unskilled with one, two, or three step instructions, not in close proximity to co-workers meaning the individual could not function as a member of a team and not in direct contact with the public. Further, this individual should be restricted to a relatively clean work environment meaning low levels of pollutants and the individual should avoid humidity. Could such an individual return to past work?

(Tr. 270).

The VE replied that the above limitations precluded Plaintiff's former work as a scheduling coordinator, but would allow the performance of "some factory work" (Tr. 270). He testified that the hypothetical individual could also perform the work of an exertionally light visual inspector (3,500 positions in the Detroit metropolitan area) and packager (4,000) (Tr. 270). The VE found that if the same individual "would be unable to mentally sustain concentration, persistence, and pace necessary to consistently do the work for eight hours a

------

[4]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

day, five days a week in order to complete a 40 hour work week," she would be precluded from all work (Tr. 271). In response to questioning by Plaintiff's attorney, the VE testified that Plaintiff's former work (as described by Plaintiff) would be characterized as "accommodated," due to her relatives' assistance in obtaining the jobs and working with her (Tr. 272).

### E.    The ALJ's Decision

Citing Plaintiff's medical records, the ALJ found that Plaintiff experienced the severe impairments of "asthma, affective disorder, anxiety related disorders, and a history of diabetes mellitus," determining however that none of the impairments met or equaled any impairment listed in 20 CRF Part 404, Subpart P, Appendix 1 (Tr. 13-14). Adopting the findings of the May, 2006 Psychiatric Review Technique, the ALJ found that Plaintiff experienced mild limitations in daily living and *moderate* difficulties in social functioning and concentration, persistence, and pace (Tr. 14). She found that Plaintiff retained the following residual functional capacity ("RFC"):

> [A] full range of work at all exertional levels but with the following nonexertional limitations: the claimant requires work that is simple, unskilled, with one, two, or three step instructions, not in close proximity to coworkers (meaning that the individual could not function as a member of a team) and not in direct contact with the public. The claimant should be restricted to a relatively clean work environment (low levels of pollutants) and should avoid humidity

(Tr. 15). Adopting the VE's job findings, the ALJ found that Plaintiff could perform her past relevant work as a factory laborer and the exertionally light work of a visual inspector and packager (Tr. 19).

-10-

The ALJ found Plaintiff's allegations of limitations "not entirely credible" (Tr. 17). She noted that July, 2006 treating notes stating that Plaintiff had gone to a park with her children stood at odds with claims that she was unable to leave the house unaccompanied by her mother or other adult relative (Tr. 17).  The ALJ also noted that Plaintiff had been advised to seek employment by her therapist and that her  motivation for therapy had been deemed "fair" (Tr. 17). The ALJ observed that Plaintiff's testimony that she had not used marijuana in the year before the hearing was contradicted by treating records showing marijuana use 10 months before the hearing (Tr. 17).  The ALJ disputed Plaintiff's contention that she performed only "accommodated" work, noting that while Plaintiff obtained jobs through the help of relatives, "[a]ll employers were legitimate, arms-length, employers" and that she earned substantial gainful employment for significant periods (Tr. 18).

## **STANDARD OF REVIEW**

 The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence is more than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way,

-11-

without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy."

-12-

*Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A.   Disability Under the Listings

Plaintiff argues first that the record supports a finding of disability at Step Three of the administrative sequence.  *Plaintiff's Brief* at 13-14.  She points to Dr. Madhavan's treating records and findings of numerous "marked" limitations as a result of anxiety-related conditions.  *Id.*  She makes an interwoven argument that the ALJ erred by declining to adopt the treating psychiatrist's opinion.  *Plaintiff's Brief* at 14-16.

In establishing the presence of an anxiety-related disorder under 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.06, symptoms of anxiety must be established under the "'A' Criteria.'"  For a finding of disability at Step Three of the sequential analysis, the claimant must also show under the "'B' Criteria" that the disorder resulted in at least two of the following:

> 1. Marked restriction of activities of daily living.

> 2. Marked difficulties in maintaining social functioning.

> 3. Marked deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere).

> 4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

*Id.*

Alternatively, a claimant can establish disability under 12.06 by showing the presence

-13-

of an anxiety-related disorder under the "'A' Criteria" *and* the "[c]omplete inability to function independently outside the area of one's home" under the "'C' Criteria." *Id.*

Despite Dr. Madhavan's finding of numerous marked limitations, substantial evidence supports the ALJ's determination that Plaintiff was not disabled at Step Three. Citing the treating records (including Dr. Madhavan's own records) the ALJ noted that periods of increased symptoms of anxiety coincided with holiday-related stress or running out of prescription medication (Tr. 17). He noted that treating records as a whole showed that Plaintiff responded well to therapy and medication, citing records showing that she took her children to the park (July, 2006) was "cheerful and energetic" (October, 2006) and experienced reduced panic attacks (August, 2007) (Tr. 17).

The ALJ also cited treating notes stating that Plaintiff's motivation for psychological treatment was only "fair"(Tr. 17). Consistent with the treating observation, Plaintiff testified that she did not like going to therapy and or taking psychotropic medication, but continued to use marijuana regularly for at least a few months after beginning treatment (Tr. 266). Despite allegations of long-term, disabling psychological limitations, Plaintiff did not seek mental health treatment until February, 2006 - the same month she applied for DIB (Tr. 42, 118).

To be sure, Plaintiff is correct that under Listing 12.06, Dr. Madhavan's January, 2008 finding that she experienced numerous marked psychological limitations, *if adopted*,

-14-

would direct a finding of disability at Step Three (Tr. 182-183).[5]   However, the ALJ

permissibly rejected Dr. MadHavan's 2008 finding of marked limitations in social, work, and

adaptive functioning, observing that "nothing in the psychiatrist's own examination of the

claimant that would support such limitations" (Tr. 18).   The ALJ  noted that "all treatment

notes from 2006 through the fall of 2007 show GAF scores compatible with unskilled work"

(Tr. 18).   While Plaintiff seizes on this statement to argue that ALJ erred by relying

exclusively on the GAF scores, *see Kornecky v. Commissioner of Social Security,* 2006 WL

305648, *14 (6th Cir.2006)(citing *Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 241 (6th

Cir.2002)), the ALJ also drew her conclusions from the text of the treating notes showing that

Plaintiff was well groomed, with "clear and fluent speech, normal motor activity, and an

unlimited ability to perform household and childcare tasks" (Tr. 17).

        Plaintiff's related argument that the ALJ merely "cherry picked" the treating record

for material supporting the non-disability finding is unavailing, given that ALJ acknowledged

that the treatment records also showed "crying spells, loneliness, and anxiety" as well as the

underlying diagnosis of agoraphobia (Tr. 17).   Contrary to Plaintiff's assertion, the treating

records and transcript as a whole generously support the conclusion that her psychological

limitations were not wholly disabling.   Despite her allegations that she was unable to leave

the house unaccompanied by a family member, she acknowledged that she was able to drive

---

        [5]

Plaintiff does not argue directly that the ALJ failed to comply with procedural requirements
of a "treating physician" analysis, *i. e.,* explaining her reasons for rejecting Dr. Madhavan's
opinion.   *Hensley v. Astrue, 573* F. 3d 263, 266 (6th Cir. 2009).   In any case, the undersigned
finds no error, procedural or otherwise, in the discussion of these treating records.

herself to work for several years before losing her job (Tr. 259).   Treating records showing that she was able to leave the home unaccompanied also support the conclusion that she was capable of some work (Tr. 163).   The ALJ's adoption of Dr. Blake's findings of mild to moderate limitations (over Dr. Madhavan's findings of moderate to marked limitations) is well supported by the treating records and the rest of the transcript (Tr. 140-142, 144-146).

### B.  The Credibility Determination

 Plaintiff also submits that the ALJ's credibility determination was based on an erroneous reading of the record.  *Plaintiff's Brief* at 16-18.   Citing SSR 96-7p, she contends that the ALJ improperly rejected her allegations of limitation.  *Id.*

The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms.  *See Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir. 1986).  "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques."  *Id.*  Second, SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ must analyze his testimony "based on a consideration of the entire case record."

Plaintiff's argument centers on the second prong of SSR 96-7.   She complains that the ALJ cited her marijuana use 10 months prior to the hearing to discount her testimony that

-16-

she had not used illegal drugs in the year before the hearing, arguing that the two month difference was a minor discrepancy. *Plaintiff's Brief* at 17. However, in making her credibility determination, the ALJ permissibly noted that Plaintiff's testimony was not accurate. That I might be inclined to ascribe less weight to this factor is irrelevant, as this is not *de novo* review. Likewise, the ALJ's inference that  Plaintiff had been advised by her therapist to seek work was not a distortion of the therapist's comment that Plaintiff should use her baking skills to earn money. *Id.* (*citing* Tr. 161).   In fact, the treating notes indicate that Plaintiff should consider a "side job" but do not state that her baking should be limited to part-time or that she was unable to work full time (Tr. 161).   As discussed above, Plaintiff's admission that she was able to drive herself to work when required undermines that the allegation that she was unable to leave her house unaccompanied (Tr. 259, 264). Because the ALJ's credibility determination is well explained and well supported, it should not be disturbed by this Court. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir. 1993); *See also Anderson v. Bowen* 868 F.2d 921, 927 (7th Cir. 1989)(*citing Imani v. Heckler,* 797 F.2d 508, 512 (7th Cir.1986))(An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record'").

### C.  The Vocational Testimony

Plaintiff argues next that the ALJ erred by failing to adopt the VE's testimony that her former work, by her own account, was "accommodated." *Plaintiff's Brief* at 18-20.  Citing 20 C.F.R. § 404.1573(c)(6), she disputes that her former "accommodated" work could be considered "past relevant work." *Plaintiff's Brief* at 19.  She argues in effect that the

-17-

hypothetical question did not account for her inability to work outside the home. *Id.* On a related note, she faults the ALJ for stating in Finding 6 (Tr. 18) that she could "perform any past relevant work" when in fact, the text following the finding states that the only past relevant work she could perform was that of factory worker (Tr. 19). *Id.*

Pursuant to 20 CFR § 404.1573(c)(6), work performed under "special conditions" may not qualify substantial gainful activity, including (d) "the opportunity to work despite [an] impairment because of family relationship, past association with your employer, or your employer's concern for your welfare."

Plaintiff alleges that her work was performed under "special conditions," and thus, her former work does not qualify as substantial gainful activity. *Plaintiff's Brief* at 19. She asserts that the VE testified that her former was "accommodated work." *Id.* (*citing* Tr. 272). This argument is unavailing. First, the ALJ rejected Plaintiff's contention that the former work was accommodated, noting that while Plaintiff *procured* jobs with the help of family members, "[a]ll employers were legitimate, arms-length employers" and that she had worked for many years (Tr. 18). The ALJ's finding that Plaintiff's job performance met the expectations of non-relative employers for significant periods is not unreasonable. Second, as discussed in Section **B.**, the ALJ's rejection of the "accommodated work" claim and the more general allegations of disability was well supported. Having adequately explained her credibility determination, she was not required to include the discredited allegations in the question to the VE. *See Stanley v. Secretary of Health and Human Services,* 39 F.3d

-18-

115,118-119 (6th Cir.1994)(*citing Hardaway v. Secretary of Health & Human Servs.,* 823 F.2d 922, 927-28 (6th Cir.1987)("An ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

Finally, although the ALJ's finding that Plaintiff was "able to perform *any* past work" (Tr. 18) contradicts her later statement that Plaintiff was capable of performing only the factory job (Tr. 19), this finding, almost certainly a typographical error, is harmless, given that the text on the page following (consistent with the VE's testimony) states that Plaintiff's ability to perform past relevant work would be limited to the factory work (Tr. 19). Because the Step Four finding is accompanied by the Step Five finding that Plaintiff was also capable of a significant range of other work, a remand on the basis of the Step Four error would be highly unlikely to change the ALJ's determination. *See Rabbers v. Comm. Soc. Sec.,* 582 F.3d 647 (6th Cir.2009). As such, the administrative decision should remain undisturbed. *Id.*

In conclusion, I note that my recommendations to uphold administrative findings should never be interpreted to trivialize legitimate health concerns. Nonetheless, in the present case, the ALJ's decision is easily within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment [Dkt # 15] be GRANTED, and that Plaintiff's Motion for Summary Judgment

-19-

[Dkt #13] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: November 29, 2011

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on November 29, 2011.

s/Johnetta M. Curry-Williams
Case Manager
