UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KRISTY L. WILLS,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
                                      /

Case No. 10-cv-14067

HONORABLE STEPHEN J. MURPHY, III

**ORDER OVERRULING OBJECTIONS** (docket no. 18)**, ADOPTING REPORT AND RECOMMENDATION** (docket no. 17)**, GRANTING THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT** (docket no. 15)**, AND DENYING WILLS' MOTION FOR SUMMARY JUDGMENT** (docket no. 13)

    This social security appeal is before the Court for consideration of Plaintiff Kristy L. Wills' objections to the Report and Recommendation filed by a United States magistrate judge. The magistrate judge found that the Administrative Law Judge ("ALJ") properly reviewed and weighed all of the evidence to determine that Wills was not disabled, and that substantial evidence supports the ALJ's findings. Accordingly, the magistrate judge recommended denying Wills' motion and granting the motion filed by the Commissioner of Social Security ("Commissioner"). The Court finds that the magistrate judge did not err in recommending affirmance of the ALJ's decision. Therefore, the Court will overrule the objections, adopt the Report, deny Wills' motion, grant the Commissioner's motion, and dismiss the case.

**BACKGROUND**

    Wills filed her application for Disability Insurance Benefits and Supplemental Security Income Benefits on February 6, 2006, alleging disability as of March 1, 2004. A.R. 11, 42-46. She requested an administrative hearing after the denial of her claim, which the ALJ

heard on February 11, 2008. A.R. 32-40, 46, 245-73. On February 26, 2008, the ALJ issued her finding that Wills is not disabled. A.R. 11-20. Wills appealed the decision, but the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. A.R. 3-7. Wills filed a complaint in this Court for judicial review of the Commissioner's decision. The parties filed cross-motions for summary judgment, on which the magistrate judge issued the Report & Recommendation.

To evaluate whether a claimant is disabled under the Social Security Act, the Commissioner follows a five-step sequence. *See* 20 C.F.R. §§ 416.920(a)(4); 404.1520(a)(4). He or she asks: (1) Is the claimant still performing substantial gainful activity? (2) Are the claimant's impairments severe?; (3) Do the claimant's impairments meet or equal a listing in the Listing of Impairments? (4) Can the claimant still perform his or her past relevant work?; and (5) If the claimant can no longer perform his or her past relevant work are there other significant numbers of jobs in the national economy which the claimant can perform? *See Gwizdala v. Comm'r of Soc. Sec.*, No. 98-1525, 191 F.3d 452, at *2 n.1 (6th Cir. Sept. 16, 1999) (table).

At step one, the ALJ found that Wills had not engaged in substantial gainful activity since the alleged onset date. At steps two and three, the ALJ found that Wills' claimed disorders — "asthma, affective disorder, anxiety related disorders, and a history of diabetes mellitus" — were severe impairments, but none of Wills' impairments, either alone or in combination, satisfied a listing's criteria in the Listing of Impairments. *See* Appendix I, Subpart P of 20 C.F.R. § 404.

To answer questions four and five, regarding a claimant's ability to perform past relevant work or other work in the national economy, the ALJ must assess the claimant's residual functional capacity. 20 C.F.R. §§ 416.920(4), 404.1520(4). Here, the ALJ

determined that Wills has the residual functional capacity to perform "a full range of work at all exertional levels" but that she had non-exertional limitations restricting her to work that was "simple, unskilled, with one, two, or three step instructions, not in close proximity to co-workers, meaning the individual could not function as a member of a team and not in direct contact with the public" and that she required a "relatively clean work environment and avoidance of humidity." A.R 15. In reaching this determination, the ALJ found that Wills' "statements concerning the intensity, persistence and limiting effects of her alleged symptoms" were "not entirely credible." R 16-17. Based on this assessment, the ALJ determined at step four that Wills could return to her past relevant work as a factory laborer, and at step five that Wills could perform a substantial number of other jobs in the national economy as a visual inspector and packager. A.R. 19. Accordingly, the ALJ concluded that Wills was not disabled.

## STANDARD OF REVIEW

Recommendations on dispositive motions by a magistrate judge are reviewed pursuant to Civil Rule 72(b). The district judge who referred the motion is only required to perform a de novo review of the magistrate judge's findings if the parties "serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2).

This Court must affirm the ALJ's findings if they are supported by substantial evidence and the ALJ employed the proper legal standard. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence standard "presupposes that there is a zone of choice within which decisionmakers can go either way, without interference from the

3

courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir.1986) (en banc) (internal quotes and citations omitted). Thus, when the Commissioner's decision is supported by substantial evidence, it must be upheld even if the record might support a contrary conclusion. *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 108 (6th Cir.1989). The Court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984).

## DISCUSSION

Wills argues that the magistrate judge incorrectly affirmed the ALJ's (1) finding that Wills did not meet or equal the criteria of Listing 12.06; (2) rejection of the opinion of Dr. Madhavan; (3) finding that Wills' testimony was not credible; and (4) determinations at steps four and five.

I.  Listing 12.06 and Rejection of the Opinion of the Treating Psychiatrist

Wills argues that the ALJ's finding that her impairments did not meet or equal the criteria for "anxiety-related disorders" under Listing 12.06 was not supported by substantial evidence, in large part due to the ALJ's rejection of the opinion of her treating psychiatrist. Since the objections are related the Court will address them together.

To establish disability due to an anxiety-related disorder, Wills must demonstrate the symptoms of anxiety in paragraph A of Listing 12.06, and show that those symptoms resulted in the effects described in either paragraph B or paragraph C. *See* 20 C.F.R. § 404, Subpt. P, app. 1, 12.06 List. The ALJ did not directly address whether Wills demonstrated the symptoms of anxiety in paragraph A, but she determined that Wills did not meet the Listing's criteria because she did not demonstrate the effects described in paragraph B or C. Paragraph B requires that she demonstrate "at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social

4

functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration." 20 C.F.R. § 404, Subpart P. app. 1. Paragraph C requires that she show a "complete inability to function independently outside the area of [her] home." *Id.*

Dr. Madhavan prepared a residual functional capacity assessment of Wills, concluding that she exhibited "marked" restriction of daily living and "marked" difficulties in maintaining social functioning, which became extreme when at risk for or in a panic attack. A.R. 183-84. These conclusions, if adopted, would direct a finding that Wills satisfied the criteria in Paragraph B and was disabled. But, the ALJ declined to adopt Dr. Madhavan's findings. She concluded that "the limitations identified [in Dr. Madhavan's residual functional capacity assessment] are out of proportion with the remaining medical evidence in the record and there is nothing in [Dr. Madhavan's] own examination of the claimant that would support such limitations." A.R. 18. Instead, based on her review of the record and the assessment prepared by a non-examining state agency psychologist, the ALJ found that Wills does not have anxiety that results in inability to function independently outside her home, and experiences *mild* limitations in daily living and *moderate* difficulties in social functioning and concentration, persistence and pace. A.R. 14. Accordingly, she determined that Wills did not meet the criteria in Listing 12.06. A.R. 15.

Wills argues that this decision was improper because Dr. Madhavan's treatment notes "showed ongoing and severe symptoms of panic disorder and depression despite various medications." Pl.'s Obj. to Report 1, ECF No. 18. Wills argues that although she showed brief improvement in some symptoms, she "was still noted to have very limited exposure to being outside her house." *Id.* In addition, her sessions were discontinued temporarily "just as she was starting to improve" because her insurance coverage expired for the year.

5

*Id.* Moreover, Wills argues that the ALJ failed to explain how it developed its residual functional capacity assessment, after rejecting Dr. Madhavan's assessment. *Id.* at 2.

The Court finds that the ALJ's determination that Wills did not meet the Listing's criteria was supported by substantial evidence. Noting that Wills "cares for three young children and takes care of her household by herself," the ALJ found that Wills had only a "mild restriction" in activities of daily living. A.R. 14. Because of her ability to care for her children and "past work history of lengthy periods of substantial gainful activity," the ALJ concluded that Wills has only "moderate difficulties" in concentration, persistence or pace. *Id.* Taking note of Wills' "anxiety and trouble going out alone and being in public places," the ALJ found that she has "moderate difficulties" in social functioning. *Id.*

The opinion taken as a whole shows that the ALJ relied heavily on Dr. Madhavan's treatment notes and Wills' testimony to reach her conclusions. For example, the ALJ relied on the treatment records, including Dr. Madhavan's records, to note that Wills experienced benefits from therapy and responded to medication. A.R. 17. In the months after beginning therapy, Wills reported reduced symptoms, took her children to the park on her own, and was described as "cheerful and energetic" in treatment notes. *Id.* In August 2007, she reported fewer panic attacks and an increasingly stable mood. *Id.* The ALJ relied on treatment records to note correlation between reports of increased anxiety and holiday stress. or running out of prescription medication. *Id.* The ALJ also noted that Dr. Madhavan's treatment notes described Wills as having only a "fair" motivation for psychological treatment. *Id.* The magistrate reviewed the ALJ's findings to conclude that

6

the ALJ's residual functional capacity determination was supported by substantial evidence.[1] The Court agrees. Wills' objection on this issue will be overruled.

II. Credibility Finding

Wills next argues that the ALJ's rationale in support of her credibility finding is flawed and the credibility determination is unsupported by substantial evidence. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility. Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir.1997) (citing *Villarreal v. Sec'y of Health and Human Servs.*, 818 F.2d 461, 463 (6th Cir.1987)).

The ALJ conducted an extensive review of the record to support her determination that Wills' "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible." A.R. 17. It reviewed Wills' testimony, noting that,

> [S]he has anxiety and panic attacks with crying and sweating once per week. The claimant testified that she is a single parent of three children ages, 11, 5, and 3. She stated that she drives, likes to draw, and spends time at home watching television. The claimant reported that she spends time with her family, does activities with her children, and goes to school for parent-teacher conferences. She noted that a family member accompanies her when she goes out in public and that she performed past work near friends and family members. Her oldest child is in school all day, and her 5-year old attends a half-day kindergarten program. The claimant stays at home with the three-year old. The claimant also testified that she gets her children up for school, dresses herself, does laundry, shops for groceries, washes dishes, and does housekeeping.

---

[1] The magistrate also noted that "Plaintiff does not argue directly that the ALJ failed to comply with procedural requirements of a 'treating physician' analysis, i.e., by explaining her reasons for rejecting Dr. Madhavan's opinion." Report & Recommendation, 15 n.5 (citing *Hensley v. Astrue,* 573 F.3d 263, 266 (6th Cir. 2009)). The magistrate judge then concluded that in any case, he found no such error in the ALJ's discussion of the treating records. Wills did not object to this finding, therefore it is not before the Court for review.

A.R. 16.

The ALJ then reviewed the course of Wills' treatment, observing that Wills has a "history of depression with complaints of crying spells, loneliness, and anxiety." A.R. 17. In February 2006 she was diagnosed "with major depressive disorder, single episode, anxiety disorder with panic attacks and a Global Assessment Functioning ('GAF') of 52."[2] *Id.* Nonetheless, the ALJ noted that at the time of that diagnosis Wills was not taking medication for her condition. *Id.* The ALJ's review of her treatment record over the next two years shows that Wills noted improvement due to medication, reduced panic attacks, an increasingly stable mood, and was able to go to the park with her children. *See* A.R. 17, 163, 171. Although her GAF score dipped to 45 in September 2007, the ALJ observed that the record did not show continuously low GAF scores. A.R. 18. Wills was prescribed new medication for her condition in September, and on November 20, 2007, she "reported improved mood and decreased anxiety." A.R. 18, 181. The ALJ also noted that the December 2007 treatment notes attributed the recurrence of increased anxiety to the holidays and financial stress. A.R. 18. Finally, the ALJ concluded that Wills' testimony regarding her limitations

> is not credible, given the contradictory information in the medical record that indicates motivation and ability to work. Further, the claimant's daily activities show that the claimant has a fairly active lifestyle and are inconsistent with the claims of functional restrictions. If the claimant were having the level of functional limitations as alleged, one would expect consistent recorded complaints in the treatment record.

---

[2] GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations. *White v. Comm's of Soc. Security*, 572 F.3d 272, 276 (6th Cir. 2009). "A GAF of 41 to 50 means that the patient has serious symptoms . . . OR any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job). A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning." *Id.* (quoting *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 924 n.1 (E.D. Mich. 2005) (citations omitted)).

8

*Id.*

In arguing that the ALJ's credibility determination was erroneous, Wills objects to several of the ALJ's factual findings. First, Wills states: "The ALJ noted that the Plaintiff was out of medication on May 24, 2006, and had used marijuana. However, Plaintiff only ran out of medication once at the very start of her treatment plan, and discontinued her marijuana usage immediately at the recommendation of her therapist." Pl.'s Obj. 3. Wills argues that any implication that Wills was noncompliant with therapy because of smoking marijuana is a factual error, and that neither the marijuana use nor running out of medication "caused Plaintiff's symptoms of debilitating anxiety and depression, which remained constant throughout treatment." *Id.*

The Court notes first that the ALJ did not imply that Wills was non-compliant with therapy. The ALJ made her observation about marijuana use to observe that Wills' testimony was inconsistent with the record on the issue of when she had stopped using marijuana. *See* A.R. 17 ("The claimant testified that she last used marijuana a year prior to the hearing. However the record shows that on April 2, 2007, the claimant was using marijuana on a weekly and ongoing basis."). As the magistrate judge observed, the ALJ may note inaccuracies in testimony when making a credibility finding. Second, the ALJ's statement about Wills running out of medicine was also not inaccurate. The ALJ stated, "The claimant reported ongoing anxiety on May 24, 2006, but had been out of medication since the beginning of the month." A.R. 17. This observation, and the implied correlation between running low on medication and increased symptoms, is supported in the record. *See* A.R. 159 (noting Wills "has been out of the meds and in anxiety . . . ."). The Court finds no error.

9

Wills next contends that the ALJ improperly took out of context Dr. Madhavan's recommendation that Plaintiff consider a "side job" with baking, and construed it as a statement that Plaintiff was able to do work, or get a full-time job. But, as the magistrate judge noted, the ALJ did not mischaracterize Dr. Madhavan's statement: "The ALJ's inference that Plaintiff had been advised by her therapist to seek work was not a distortion of the therapist's comment that Plaintiff should use her baking skills to earn money. In fact the treating notes indicate that Plaintiff should consider a 'side job' but do not state that her baking should be limited to part-time or that she was unable to work full-time." Report & Recommendation 17; A.R. 161. The Court agrees and finds no error in the ALJ's observation.

Third, Wills objects that the magistrate judge did not address her contention that the ALJ erred in finding Wills not credible because she has a "fairly active lifestyle and if she were so functionally impaired, 'one would expect consistent recorded complaints in the treatment record.'" Pl.'s Obj. 3 (quoting A.R. 18). Wills argues that her "lifestyle is essentially restricted to the four walls of her home, which is not an 'active' lifestyle indicative of the ability to perform [substantial gainful activity]." *Id.* But the ALJ did not use Wills' ability to care for and raise three children as a single parent as ipso facto evidence that Wills was capable of substantial gainful activity. Instead, the ALJ considered it alongside other evidence in the record — including evidence that Wills responded to treatment, but was not motivated to pursue it, and evidence that Wills had been able to leave home unaccompanied and to take her kids out — and concluded that Wills' testimony regarding the severity of her limitations was not entirely credible. Wills' ability to care for her children and household was one factor, among several, in the ALJ's consideration, and was not inaccurately stated.

10

Finally, Wills argues that the treatment records, along with statements of record from Wills and her mother, support her claim that she is unable to function outside her home. Obj. 4. There is evidence in the record to support that claim. *See e.g.* A.R. 151 (noting panic attacks "especially when leaving the home"); A.R. 158 (noting that Wills "doesn't go out [without] anyone being with her"); A.R.162 (Wills reported being "afraid to come inside the lobby" at therapist's office); A.R.169 (noting Wills' long-term goal to out with kids to public places without severe anxiety). But nonetheless, as the magistrate judge observed, other record evidence supports the ALJ's conclusion that Wills' limitations were not as severe as she claimed. *See Smith*, 893 F.2d at 108 (when the Commissioner's decision is supported by substantial evidence, it must be upheld even if the record might support a contrary conclusion). For example, on July 20, 2006, Wills reported "some benefits" from her medication, and stated that she had "been able to go to the park with her children." A.R. 163. Wills also testified that she had been able to drive herself to work when required in the past. A.R. 259, 264. Moreover, the ALJ noted that "all treatment notes from 2006 through the fall of 2007 show GAF scores compatible with unskilled work." A.R. 18.

Accordingly, the Court cannot conclude that the ALJ's adverse credibility determination was unsupported by substantial evidence. *See Norris v. Commissioner of Soc. Sec.*, No. 11-5424, 2012 WL 372986, at *5 (6th Cir. Feb. 7, 2012) (approving credibility determination when ALJ "did not misconstrue facts in the record or overlook other significant evidence" and did "identif[y] specific facts supported by the record which cast doubt on the severity of the disabilities" described by the claimant).Therefore, her credibility determination is within the "zone of choice" afforded decision-makers and will not be disturbed by this Court. *Mullen,* 800 F.2d at 545.

III. Step Four and Step Five Determinations

Wills next objects to the ALJ's step four and step five determinations. She argues that the ALJ's step four determination was erroneous because (1) her previous work should be treated as work performed under "special conditions," pursuant to 20 C.F.R. §§ 404.1573(c) and 416.973(c), and (2) the ALJ did not address the vocational expert's testimony that Wills could perform only "some" of her past relevant work. Pl.'s Obj. 4-5. She argues that the ALJ made an erroneous step five determination because the hypothetical posed to the vocational expert did not incorporate the accommodations Wills had received in her prior employment.

A. The ALJ's Findings at Step Four

At step four, it is the claimant's burden to show that she is unable to perform past relevant work. *See Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987). In order to be considered "past relevant work," "a job must have been performed within the last fifteen years, performed long enough to learn how to do it, and [constitute] substantial gainful activity." *Carreno v. Comm'r of Soc. Sec.*, 99 F. App'x 594, at *1 (6th Cir. May 7, 2004). Under 20 C.F.R. §§ 404.1573(c) and 416.973(c), when an applicant's work was performed under "special conditions," the Commission "may find that it does not show that [the claimant was] able to do substantial gainful activity," and thus could not be "past relevant work." One example of such a special condition is when the claimant was "given the opportunity to work despite impairment because of family relationship, past association with [an] employer or [an] employer's concern for [the claimant's] welfare." 20 C.F.R. § 404.1573(c)(6).

"A vocational expert's response to a hypothetical question can serve as a basis for substantial evidence 'if the question accurately portrays [plaintiff's] individual physical and

12

mental impairments.'" *Varley v. Sec. of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted). Here, the vocational expert testified that Willis had engaged in past work as a factory laborer, which was unskilled and light, and work as a scheduling coordinator which was semi-skilled and sedentary. A.R. 270. The ALJ then posed the following hypothetical:

> Please assume an individual the same age, education and past work experience as Ms. Wills. Further assume that this individual would require work which is simple and unskilled with one, two, or three step instructions, not in close proximity to co-workers, meaning the individual could not function as a member of a team and not in direct contact with the public. Further, this individual should be restricted to a relatively clean work environment meaning low levels of pollutants and the individual should avoid humidity. Could such an individual return to past work?

A.R. 270. The vocational expert responded, "I would say some of the past work. She could not be a scheduling coordinator. She could do some of the factory work, not all of it." A.R. 270.

Wills argues, however, that because she was hired through her relatives and worked side-by-side with them in her previous employment, her previous employment should not be treated as past relevant work. She points, in support for this argument, to the vocational expert's response to a question from Wills' counsel. The vocational expert stated, based on the testimony he heard from Wills', that her past work was "accommodated employment" that would not "generally be available to people with employers." A.R. 272.

Specifically, Wills testified that she was intermittently employed between 1995 and 2004. She worked for six-and-a-half years at Precision Hardware in shipping and receiving; at American Sun Roof as a set up laborer; and as a closing coordinator for Financial Title Services. A.R. 253-63. She obtained each position with the assistance of a relative, and was able to work side-by-side or at the same work station as a relative at almost all times. *See* A.R. 260-63. She lost the Precision Hardware position because of panic attacks and

13

"a domestic violence situation." A.R. 260. She was fired from American Sun Roof after taking medical leave. A.R. 262. And she was laid off from Financial Title Sources in 2004, along with 120 other workers at the company. A.R. 263.

The ALJ considered Willis's testimony and found that "the claimant did obtain work through family and friends, but this is not uncommon for anyone." A.R. 18. The ALJ also noted that Wills never worked in a *family-owned* business, and that "[a]ll employers were legitimate, arms-length employers." *Id.* Accordingly, the ALJ concluded that her employment was not "accommodated in the legal sense." A.R. 18. The magistrate judge additionally noted that because Wills held her previous positions for "many years," the ALJ reasonably found that Wills' "job performance met the expectations of non-relative employers for significant periods," and thus constituted past relevant employment. Report & Recommendation 18; *see also Boyes v. Sec. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (finding "special conditions" existed when claimant required "constant on-site supervision," "special transportation," and was less than half as productive as other employees). Moreover, the magistrate judge found that because the ALJ had adequately explained her credibility determination regarding the strength and severity of Wills' symptoms, she was not required to include the discredited allegations in her hypothetical to the vocational expert. *Id.* at 18-19 (citing *Stanley v. Sec. of Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals.")). The Court agrees. The hypothetical posed by the ALJ was sound, and Wills' prior work is justly considered substantial gainful activity.

Wills also argues that the ALJ did not address the vocational expert's testimony that Wills could perform only "some" of her past relevant work. Obj. 4-5. Specifically, the ALJ found that Wills could "perform her past relevant work as a factory worker," but the

14

vocational expert only testified that Wills could perform "some" of her past work as a factory worker. The ALJ's opinion makes no mention of the qualification "some." *See* A.R. 18-19. ("The vocational expert testified that a hypothetical individual of the claimant's age, . . . education, vocational history, and residual functional capacity could perform the claimant's past work as a factory worker. Accordingly, the undersigned finds that the claimant is able to perform her past relevant work as a factory laborer."). The Court agrees that the ALJ's finding at step four was inconsistent with the vocational expert's testimony and the ALJ did not address the inconsistency. But because, as discussed next, the Court finds that the ALJ's step five finding should remain undisturbed, the error does not merit remand.

   B.  The ALJ's Findings at Step Five

At step five, the burden shifts to the Commissioner to show that the claimant is capable of performing other jobs in the national economy. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011). Here, after setting forth the hypothetical, the ALJ asked the vocational expert, "Would there additionally be other work for such an individual?" The vocational expert replied, "I would say yes. I would think jobs like visual inspecting, certain kinds of light packaging jobs. Those are jobs that would be compatible with the hypothetical." A.R. 270. The ALJ relied on this testimony to find Wills "not disabled" at step five. *See* A.R. 19-20 ("Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.").

Wills argues that this finding is erroneous because the ALJ failed "to account for the vocational testimony regarding the effect of accommodation." Pl.'s Obj. 5. This is substantially the same objection made by Wills at step four, addressed by the Court above.

As previously discussed, the ALJ is not required to include the discredited allegations in her hypothetical to the vocational expert. *Stanley*, 39 F.3d at 118-19. Having determined that Wills was not accommodated in her previous employment and that Wills' testimony regarding the severity of her limitations was not entirely credible, the ALJ was not obliged to incorporate accommodations in the hypothetical at step five. Therefore, the magistrate judge properly affirmed the ALJ's step five finding that Wills is not disabled.

## CONCLUSION AND ORDER

For the reasons set forth above, the Court will adopt the magistrate judge's Report and affirm the decision of the ALJ.

**WHEREFORE**, it is hereby ordered that the objections (docket no. 18) are **OVERRULED** and the Report (docket no. 17) is **ADOPTED**.

**IT IS FURTHER ORDERED** that the Commissioner's motion for summary judgment (docket no. 15) is **GRANTED** and Wills' motion for summary judgment (docket no. 13) is **DENIED**.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: February 17, 2012

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 17, 2012, by electronic and/or ordinary mail.

Carol Cohron
Case Manager